Dedham<br>Bank<br>v.<br>Chickering.

<em>Bond adjudged forfeited.</em>[3]

---

## Benjamin R. Nichols, Treasurer of the Norfolk and Bristol Turnpike Corporation, *versus* William Bertram *et al.*

342

Passing in a vehicle swiftly by a turnpike gate and not stopping when called after to pay the toll, is a forcible passing within the meaning of the statutes respecting turnpike roads.

Erecting a toll-board with the rates of toll in the small Roman character, but of a large size, was held to be a compliance with a statute requiring them to be in "large or capital letters."

This was an action against the defendants for forcibly passing a turnpike gate of the Norfolk and Bristol Turnpike Corporation, without paying the toll.

Upon the trial, in the Court of Common Pleas, before *Williams* J., it appeared that the defendants were in a wagon drawn by one horse upon a quick trot, the toll-gatherer being at the door of the tollhouse, and the gate (which they knew to be a turnpike gate) being open ; that the toll-gatherer called to them first when they had arrived within about one rod of the gate, again when they were passing him, and a third time after they had passed him ; that they did not make any reply, nor pay the toll, but after they had gone about ten rods, greatly increased their speed.

It also appeared that the sign-board containing the rates of toll was written chiefly in the small Roman letter, but of a size so large as to be legible at the distance of more than three rods.

The defendants objected that the plaintiff had not proved a forcible passing, within the meaning of the statute creating the turnpike corporation, and that the rates of toll were not

---

[3] See <em>Dedham Bank</em> v. <em>Chickering</em>, 4 Pick. 314.

in capital letters ; and a verdict being taken in their favor by the direction of the judge, the plaintiff filed his exceptions.

The *St.* 1801, *c.* 69, establishing this corporation, provides that it shall, at each place where the toll shall be collected, erect a sign or board, with the rates of toll " fairly and legibly written thereon, in large or capital letters." The *St.* 1804, *c.* 125, which defines the general powers and duties of turnpike corporations, enacts in § 4, that all turnpike corporations shall erect a sign-board, with the rates of toll " fairly and legibly written or printed in capital letters ; and whenever said corporation shall neglect so to do, they shall not be entitled to demand or receive any toll at the said gate."

*Metcalf* and *Fiske*, for the plaintiff, said that the direction of the judge on the defendant's first objection was in the plaintiff's favor, and that he excepted only to the direction, that the words " large or capital " meant " large, to wit, capital." The intention of the legislature was that the letters should be easily legible, and this appears, not only from the phrase in the particular statute in question, but also from the variety of expressions used in different acts respecting toll bridges and turnpike roads ; such as, " fairly and legibly written,"—" large letters,"—" large characters,"—" large capital letters,"—" large capital characters,"—" large and capital letters,"—" large or capital letters." Under the act creating this corporation, erecting a toll-board is not a condition precedent to their right to demand toll. The general act of 1804, *c.* 125, is prospective, even in terms, but if it were otherwise it could not affect the rights previously granted to this corporation.

*Worthington*, *contrd*, insisted, that " large or capital letters," in the private act, meant *capitals*, and that the expression " capital letters" in the general statute was explanatory. This last mentioned statute applies to all turnpike corporations without distinction, and it was so considered in *Wales* v. *Stetson*, 2 Mass. R. 143. Erecting a toll-board in capital letters was therefore a condition precedent to the right to demand toll. By a forcible passing, the statute means a

violence done to the gate or to the person of the toll-gatherer.

*Per Curiam.* We think that the defendants' passing swiftly by the gate and not stopping when called to, but increasing their speed, was a forcible passing. It was not necessary that there should be an assault and battery or a breach of the gate.[1]

On the other point it was argued, that the general statute superseded the private act; to which it was answered, that the corporation having a grant, it was not in the power of the legislature to alter their rights, and that at least the general statute could not apply until it should be necessary to erect new toll-boards. And we think the grant is to govern. The question then is, whether "large or capital letters" means capitals or merely letters of a large size. A variety of expressions are used in the numerous statutes to which we have been referred. We think the general object of the legislature was to have the letters legible; and that they intended, that if the letters were large it should be sufficient, although they were not capitals, and that if they were capitals they should nevertheless be of a large size.[1] What are usually called small letters, if made large, should seem to be more easy to read than capital letters.

*New trial granted.*

---

[1] See Revised Stat. c. 39, § 32.

[1] The Revised Statutes now require, that the rates of toll shall be "fairly and legibly written or printed in letters of a large size." Revised Stat. c. 39 § 27.

margin: Nichols
v.
Bertram.

Suffolk,
March 28th,
1826.

344